JS-6

1
2
3
4
5
6        UNITED STATES DISTRICT COURT
7        CENTRAL DISTRICT OF CALIFORNIA
8

| | |
|---|---|
| ALIYAH ATIAS, an individual, | CASE NO. CV 14-01877 MMM (FFMx) |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION TO REMAND; *SUA SPONTE* REMANDING CASE TO STATE COURT; DENYING DEFENDANTS' MOTION TO DISMISS AS MOOT |
| vs. | |
| PLATINUM HR MANAGEMENT, LLC, a limited liability corporation, ZLATY KLEIN, an individual and DOES 1 through 20, inclusive, | |
| Defendants. | |

On January 23, 2014, Aliyah Atias commenced this action in Los Angeles Superior Court against her former employer, Platinum HR Management, LLC ("Platinum"), her former supervisor Zlaty Klein, and certain fictitious defendants.[1]  The complaint pleads eight causes of action under the California Fair Employment and Housing Act ("FEHA"), California Government Code § 12940, *et seq*.: (1) sex discrimination in violation of §§ 12940(a) and 12926(p); (2) pregnancy discrimination in violation of §§ 12926, 12940, and 12945; (3) disability discrimination in violation of § 12940; (4) failure to accommodate in violation of §§ 12926 and 12940; (5) failure to engage in the interactive process in violation of  §§ 12926 and 12940; (6) failure to prevent discrimination in violation of § 12940(k); (7) retaliation in violation of §§ 12940(h) and 12945.2;

---

[1]Notice of Removal ("Removal"), Docket No. 1 (March 12, 2014), Exhibit A ("Complaint").

and (8) harassment in violation of § 12940(j).  It also alleges three common law claims: (9) wrongful termination in violation of public policy; (10) intentional infliction of emotional distress ("IIED"); and (11) breach of contract.[2]

On March 12, 2014, defendants timely removed the action, invoking the court's diversity jurisdiction.[3]  On March 19, 2014, they filed a motion to dismiss Atias' eighth, tenth, and eleventh claims against Klein.[4]  Atias opposes dismissal of the eighth and tenth causes of action, but has agreed that it is appropriate to dismiss her breach of contract claim against Klein.[5]  Defendants' motion is therefore granted to the extent it seeks dismissal of Atias' eleventh cause of action for breach of contract against Klein.  On April 10, 2014, Atias filed a motion to remand the case to state court.[6]  Defendants oppose the motion.[7]  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds the motions appropriate for decision without oral argument. The hearing calendared for July 14, 2014 is therefore vacated, and the matters are taken off calendar.

## I.  FACTUAL BACKGROUND

Atias alleges that she was employed as Platinum's Payroll Director in its Los Angeles office for approximately ten months until she was terminated in July 2013.[8]  She contends she

---

[2]*Id.*

[3]Removal, ¶ 1.

[4]Motion to Dismiss Plaintiff's Complaint ("MTD"), Docket No. 10 (Mar. 19, 2014).

[5]Opposition to Motion to Dismiss ("MTD Opp."), Docket No. 15 (May 9, 2014), at 2 n.1 ("Plaintiff has agreed to dismiss the breach of contract cause of action against Klein").

[6]Motion to Remand Case to Los Angeles Superior Court ("Remand Motion"), Docket No. 13 (Apr. 10, 2014).

[7]Opposition to Motion to Remand Case ("Remand Opp."), Docket No. 20 (June 23, 2014).

[8]Complaint, ¶¶ 10, 13, 16.

performed her duties satisfactorily and competently.[9]   In July 2013, Atias informed her supervisor and Platinum's Vice President, Klein, that she was pregnant, that the pregnancy was high risk, and that she would need reasonable accommodations.[10]   The next day, Klein purportedly placed Atias on a performance improvement plan, giving her sixty days to improve.[11]   Klein allegedly stated that the reason for the initiation of the performance improvement plan was that Atias had been leaving work early; Atias asserts, however, that she arrived at work by 8:30 a.m. each day and regularly "work[ed] well into the evening" and on weekends as needed.[12]

Defendants allegedly terminated Atias a few days later, despite having given her sixty days to show improvement.[13]   Atias contends that defendants exacerbated the stress and risk of her pregnancy.[14]   She asserts that although defendants contend her termination was performance-related, they never gave her a written warning or imposed progressive discipline.[15]   She contends they were well aware that her family depended on her salary and health insurance, and that at such a late stage in her pregnancy, it was unlikely she would be able to find suitable employment.[16]

## II.  DISCUSSION

### A.    Legal Standard Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute.  See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).  The removal statute, 28 U.S.C.

---

[9]*Id.*, ¶¶ 10, 13.

[10]*Id.*, ¶¶ 3, 14.

[11]*Id.*, ¶ 15.

[12]*Id.*

[13]*Id.*, ¶ 16.

[14]*Id.*

[15]*Id.*, ¶ 17.

[16]*Id.*, ¶ 18.

1   § 1441, allows defendants to remove when a case originally filed in state court presents a federal

2   question or is between citizens of different states and involves an amount in controversy that

3   exceeds $75,000.  See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1331, 1332(a).  Only

4   state court actions that could originally have been filed in federal court can be removed.  28

5   U.S.C. § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v.*

6   *Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

7          The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction,"

8   and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the

9   first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*,

10  863 F.2d 662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815,

11  818 (9th Cir. 1985), and *Libhart*, 592 F.2d at 1064).  "The 'strong presumption' against removal

12  jurisdiction means that the defendant always has the burden of establishing that removal is

13  proper."  *Id.*  (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th

14  Cir. 1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

15          **B.     Whether the Court Should Remand the Case to Los Angeles Superior Court**

16          As noted, defendants contend the court has diversity jurisdiction to hear this action.[17]  "The

17  district courts . . . have original jurisdiction of all civil actions where the matter in controversy

18  exceeds the sum or value of $75,000, exclusive of interest and costs. . . ."  28 U.S.C. § 1332(a);

19  see also *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003)

20  ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the

21  amount in controversy exceed $75,000").  In any case where subject matter jurisdiction is

22  premised on diversity, there must also be complete diversity, i.e., all plaintiffs must have

23  citizenship different than all defendants.  See *Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267

24

25

26          [17]The court does not have federal question jurisdiction because all of Atlas' claims are state

27  law claims and do not raise a federal question.  See 28 U.S.C. § 1331 ("The district courts shall
    have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

28  United States").

4

(1806); see also *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 & n. 3 (1996).  Atias moves to remand the case on the basis that defendants have not shown there is complete diversity.[18]

### 1.    Whether Complete Diversity Exists

#### a.    Atias' Citizenship

A person is a citizen of the state in which he has his domicile, i.e., a permanent home where he intends to remain or to which he intends to return.  See *Gilbert v. David*, 235 U.S. 561, 569 (1915); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return").  In their notice of removal, defendants allege that Atias is a California citizen.[19]  As support for this, they rely on Atias' allegation in the complaint that she resides in California.[20]

A person's residency does not determine citizenship for purposes of diversity jurisdiction. *Kanter*, 265 F.3d at 857 ("[T]he diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency.  To be a citizen of a state, a natural person must first be a citizen of the United States.  The natural person's state citizenship is then determined by her state of domicile, not her state of residence.  A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.  A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state"); see also *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth.  Residence is not an immutable condition of domicile").

---

[18]Remand Motion at 1.

[19]Removal, ¶ 9.

[20]*Id.* (citing Complaint, ¶ 1).

1    For this reason, allegations of residency are insufficient to establish the citizenship of a

2    party.  See, e.g., *Kanter*, 265 F.3d at 857 ("A person residing in a given state is not necessarily

3    domiciled there, and thus is not necessarily a citizen of that state"); *Baldwin v. Monier Lifetile,*

4    *L.L.C.*, No. CIV05-1058PHXJAT, 2005 WL 3334344, * 2 (D. Ariz. Dec. 7, 2005) ("Allegations

5    of residency but not citizenship are insufficient to determine the existence of diversity jurisdiction"

6    (citations omitted)).  In her motion, however, Atias concedes that she is a California citizen.[21]

7    Thus, she has waived any argument that defendants failed to show she is a California citizen.

8                        **b.    Platinum's Citizenship**

9    Atias alleges that Platinum is a "limited liability corporation."[22]  In their notice of removal,

10   however, defendants allege that Platinum is a limited liability company,[23] and that it is a citizen

11   of New York and Florida.[24]  Whether Platinum is a corporation or a limited liability company is

12   relevant for purposes of diversity jurisdiction, since the citizenship of the two types of business

13   entity is determined differently.  "[A] corporation shall be deemed to be a citizen of every State

14   and foreign state by which it has been incorporated and of the State or foreign state where it has

15   its principal place of business."  28 U.S.C. § 1332(c)(1).  By contrast, the Ninth Circuit treats

16   limited liability companies like partnerships for purposes of diversity jurisdiction.  See *Johnson*

17   *v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (applying the standard

18   used by sister circuits and treating LLCs like partnerships).  Thus, "an LLC is a citizen of every

19   state of which its owners/members are citizens."  *Id.*; see also *Handelsman v. Bedford Village*

20   *Assocs., Ltd Partnership*, 213 F.3d 48, 51-52 (2d Cir. 2000) (recognizing that "a limited liability

21   company has the citizenship of its membership").

22

23       [21]Remand Motion at 4 ("[Defendants are] correct that Plaintiff is a citizen of California").

24

25       [22]Complaint at 1.  There is no form of business entity called a "limited liability

26   corporation."  Given Atias' use of the term, it is not clear to the court whether she intended to
     plead that Platinum was a limited liability company or a corporation.

27       [23]Removal, ¶ 10.

28       [24]*Id.*

                                          6

1   Defendants' allegation that Platinum is a limited liability company is supported by the New

2   York Business Entity Detail for Platinum, which states that the company is a limited liability

3   company.[25]   It is also supported by the declarations of Platinum's two owners, Simon and

4   Hadassah Ganz, submitted in support of the notice of removal.  The Ganzs state that Platinum is

5   a limited liability company, and that they are Florida and New York citizens respectively.[26]

6   Because Platinum is a limited liability company and its sole members are citizens of New York

7   and Florida, Platinum is a citizen of New York and Florida as well.

8                         **c.     Klein's Citizenship**

9        In the notice of removal, defendants alleged that Klein is a New York citizen.[27]  They also

10  allege, however, that Klein's citizenship should not be taken into account because Atias

11  fraudulently joined her as a defendant.[28]  In her motion to remand, Atias argues that Klein was not

12  fraudulently joined and that she is a California citizen.  She contends, as a result, that Klein's

13  involvement in the lawsuit destroys diversity.[29]  The court first considers whether Klein has been

14  fraudulently joined, for if she has, then her citizenship is disregarded in determining whether

15  diversity jurisdiction exists, and the court need not determine whether she is a New York or

16  California citizen.

---

20  [25]See New York Department of State Entity Information page for Platinum HR

21  Management, http://appext20.dos.ny.gov/corp_public/CORPSEARCH.
    ENTITY_INFORMATION?p_nameid=3760482&p_corpid=3750504&p_entity_name=

22  platinum%20hr%20management&p_name_type=A&p_search_type=BEGINS&p_srch_results
    _page=0 (accessed on July 6, 2014).  The court takes judicial notice of this webpage.

23  [26]Declaration of Simon Ganz in Support of Notice of Removal ("S. Ganz Decl."), Docket

24  No. 3 (Mar. 12, 2014), ¶ 2; Declaration of Hadassah Ganz in Support of Notice of Removal ("H.
    Ganz Decl."), Docket No. 4 (Mar. 12, 2014), ¶ 2.

26  [27]Removal, ¶ 11.

27  [28]*Id.*, ¶ 12.

28  [29]Remand Motion at 5-6.

### i.   Whether Klein Was Fraudulently Joined

The joinder of a non-diverse defendant is considered fraudulent, and the party's citizenship is disregarded for purposes of subject matter jurisdiction, "[i]f the plaintiff fails to state a cause of action against the [non-diverse] defendant, and the failure is obvious according to the settled rules of the state. . . ." *Hamilton Materials, Inc. v. Dow Chemical Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). "It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citing *Emrich*, 846 F.2d 1193 & n. 1; *McCabe*, 811 F.2d at 1339); see also *Burden v. General Dynamics Corp.*, 60 F.3d 213, 221-22 (5th Cir. 1995) (concluding that the district court had subject matter jurisdiction where a defendant charged with intentional infliction of emotional distress had been fraudulently joined). The defendant must "prove that individuals joined in the action cannot be liable on any theory." *Ritchey*, 139 F.3d at 1318; see also *McCabe*, 811 F.2d at 1339 (stating that the removing defendant is entitled to present facts showing that the joinder is fraudulent); *Campana v. American Home Products Corp.*, No. 1:99cv250 MMP, 2000 WL 35547714, *3 (N.D. Fla. Mar. 7, 2000) ("The removing party must show, with credible evidence, that there is no possibility that a plaintiff can state a cause of action against the nondiverse defendant").

> "Merely showing that an action is likely to be dismissed against [a] defendant does not demonstrate fraudulent joinder. Rather, it must appear to 'a near certainty' that joinder was fraudulent. As a result, the removing defendant must establish that there is absolutely no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant. . . . Thus, that a claim against the in-state defendant is insufficiently pled does not prove clearly and convincingly that there is absolutely no possibility that the plaintiff will be able to establish a cause of action." *Amarant v. Home Depot U.S.A., Inc.*, No. 1:13–cv–00245–LJO–SKO, 2013 WL 3146809, *6 (E.D. Cal. June 18, 2013).

A defendant must prove fraudulent joinder by clear and convincing evidence. *Hamilton Materials*, 494 F.3d at 1206 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir.

1  1998)).   Thus, "fraudulent joinder claims may be resolved by 'piercing the pleadings' and

2  considering summary judgment-type evidence such as affidavits and deposition testimony."

3  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting favorably the

4  Fifth Circuit's decision in *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th

5  Cir. 1995) (citations omitted)); see also *West American Corp. v. Vaughan Basset Furniture*, 765

6  F.2d 932, 936 n. 6 (9th Cir. 1985) (stating that the court may consider affidavits, depositions, and

7  other evidence); James W. M. Moore, MOORE'S FEDERAL PRACTICE § 102.21(5)(a) (3d ed. 2008)

8  ("The federal court's review for fraud must be based on the plaintiff's pleadings at the time of

9  removal, supplemented by any affidavits and deposition transcripts submitted by the parties").

10       Because courts must resolve all doubts against removal, a court determining whether

11  joinder is fraudulent "must resolve all material ambiguities in state law in plaintiff's favor."

12  *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1117 (N.D. Cal. 2002) (citing

13  *Good v. Prudential*, 5 F.Supp.2d 804, 807 (N.D. Cal. 1998)).   "If there is a non-fanciful

14  possibility that plaintiff can state a claim under [state] law against the non-diverse defendant[,] the

15  court must remand."  *Id.*; see also *Good*, 5 F.Supp.2d at 807 ("The defendant must demonstrate

16  that there is no possibility that the plaintiff will be able to establish a cause of action in State court

17  against the alleged sham defendant").   Given this standard, "[t]here is a presumption against

18  finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party

19  carry a heavy burden of persuasion."  *Plute v. Roadway Package Sys., Inc.*, 141 F.Supp.2d 1005,

20  1008 (N.D. Cal. 2001).

21       While defendants might have prevailed on their motion to dismiss Atias' harassment and

22  IIED claims on the basis that they are insufficiently pled, this does not satisfy defendants' burden

23  of showing fraudulent joinder.   Even if Atias has not presently pled sufficient facts to state a

24  harassment or IIED claim against Klein, defendants have not shown that Atias cannot amend the

25  pleading to state a viable harassment claim against Klein.  See *Padilla v. AT&T Corp.*, 697

26  F.Supp.2d 1156, 1159-60 (C.D. Cal. 2009) ("[Plaintiff alleges that] Hinojosa harassed her by

27  intentionally issuing false write-ups claiming that Plaintiff had engaged in 'falsifying documents

28  and stealing time,' ultimately leading to Plaintiff's termination.   Even if Plaintiff did not plead

facts sufficient to state a claim against Hinojosa, Defendants have not established that Plaintiff could not amend her pleadings and ultimately recover against Hinojosa for harassment under the FEHA.  Hinojosa was Plaintiff's direct supervisor at AT&T, and whether she did so in good or bad faith, it is clear that Hinojosa played an integral role in Plaintiff's termination.  A defendant is not a fraudulently joined or sham defendant simply because the facts and law may further develop in a way that convinces the plaintiff to drop that defendant, and this Court cannot find that [defendant] is a fraudulently joined or sham defendant. . . .  Denying federal diversity jurisdiction in this case, where Plaintiff seeks to include her direct supervisor in a lawsuit relating to her termination, is consistent with the Founders' intent in establishing diversity jurisdiction").

In support of her opposition to the motion to dismiss, Atias has submitted a declaration in which she states that Klein spread rumors about her at the office, gave directions to co-workers behind her back without her knowledge and then denied that she had done so, and interrupted Atias while she was working by crying and discussing her failed marriage.[30]  Atias asserts this conduct made the work environment hostile, unprofessional, and highly dysfunctional.[31]  She contends that the rumors and directions to employees undermined her role at the company as well as her dignity.[32]  Atias presumably intends to amend her complaint to add these allegations of harassment in addition to alleging that Klein harassed her by placing her on a performance improvement plan.

Defendants argue that Atias' harassment claim would fail even if the court allowed Atias to amend her complaint and plead that Klein harassed her by spreading false rumors about her, giving directions to co-workers behind her back, and interrupting Atias' work to discuss personal affairs.  They contend that the facts stated in Atias' declaration would be too conclusory to state a viable harassment claim if included in the complaint.  They do not argue that such allegations,

---

[30]See Declaration of Aliyah Atias in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss ("Atias Decl."), Docket No. 15 (May 9, 2014), ¶¶ 5-7.

[31]*Id.*, ¶ 10.

[32]*Id.*, ¶ 8.

1   if they were pled with more detail, would be insufficient as a matter of law to state a claim against

2   Klein, however.  Stated differently, defendants argue that "the complaint's shortcomings, if any,

3   are strictly factual."  *Stanbrough v. Georgia-Pacific Gypsum LLC*, No. CV 08-08303 GAF

4   (AJWx), 2009 WL 137036, *2 (C.D. Cal. Jan. 20, 2009).  Defendants do not argue there is no

5   possibility Atias could state a harassment claim against Klein.  For that reason, defendants have

6   failed to show that Klein's joinder as a defendant to the harassment claim was fraudulent.

7          Turning to Atias' IIED claim, in cases where, as here, defendants assert that a supervisor's

8   alleged conduct was not sufficiently outrageous to support an IIED claim, district courts applying

9   the fraudulent joinder standard have generally concluded that there is a non-fanciful possibility of

10  liability even if plaintiff's claim appears "relatively weak."  See *Asurmendi v. Tyco Electronics*

11  *Corp.*, No. C 08–5699 JF (PVT), 2009 WL 650386, *5 (N.D. Cal. Mar. 11, 2009).  See also

12  *Burris v. AT&T Wireless, Inc.*, No. C 06-02904 JSW, 2006 WL 2038040, *2 (N.D. Cal. July 19,

13  2006) ("Cingular does not argue that Burris cannot assert a tort claim for emotional distress

14  against his former supervisor as a matter of law.  Rather, Cingular argues that Burris failed to

15  state a claim for intentional infliction of emotional distress because he did not allege any extreme

16  or outrageous conduct, a necessary element of this claim. . . .  Although as currently ple[d],

17  Burris has not alleged conduct which may be considered extreme or outrageous, Cingular has not

18  demonstrated that, under California law, Burris would not be afforded leave to amend his

19  complaint to cure this purported deficiency.  Accordingly, Cingular failed to demonstrate that it

20  is obvious under settled state law that Burris cannot prevail against Mr. Caniglia and thus has not

21  demonstrated that this Court has subject matter jurisdiction").

22         Although Atias' IIED claim might not have survived defendants' mtion to dismiss,

23  defendants have not argued that Atias could not, as a matter of law, state an IIED claim against

24  Klein.  It is, moreover, possible Atias could do so.  See *Barsell v. Urban Outfitters, Inc.*, No.

25  09-2604 MMM (RZx), 2009 WL 1916495, *4 (C.D. Cal. July 1, 2009) (in assessing whether a

26  defendant had been fraudulently joined, stating2 that "[b]ecause this [IIED] claim is based on

27  allegations of disability discrimination, there is a non-fanciful possibility" that plaintiff can state

28  a claim against her supervisor); *Murray v. Oceanside Unified Sch. Dist.*, 79 Cal.App.4th 1338,

1 1362 (2000) (stating, in a case involving discrimination based on sexual orientation, that "a claim
2 for emotional and psychological damage, arising out of employment, is not barred where the
3 distress is engendered by an employer's illegal discriminatory practices").

4      Thus, because defendants' assertion that Atias' claims fail as a matter of law is not
5 persuasive and because the remainder of their arguments target only the sufficiency of the
6 complaint, they have failed to demonstrate by clear and convincing evidence that Klein was
7 fraudulently named as a defendant in Atias' harassment and IIED claims.  Consequently, the court
8 is not free to disregard Klein's citizenship in determining whether diversity jurisdiction exists and
9 the court must next consider whether Klein is a New York or California citizen.

10          **ii.   Klein's Citizenship**

11      "[T]he determination of an individual's domicile involves a number of factors (no single
12 factor controlling), including: current residence, voting registration and voting practices, location
13 of personal and real property, location of brokerage and bank accounts, location of spouse and
14 family, membership in unions and other organizations, place of employment or business, driver's
15 license and automobile registration, and payment of taxes." *Lew v. Moss*, 797 F.2d 747, 750 (9th
16 Cir. 1986).

17      Atias argues that Klein is a California citizen because she has resided in California for more
18 than three-and-a-half years, she works in Los Angeles as Platinum's Vice President of Operations,
19 and she serves as agent for service of process in California for Platinum and a company called
20 Horizon Aso, LLC.[33]   As evidence, Atias cites the declaration Klein submitted in support of
21 defendants' removal,[34] as well as a copy of the California Secretary of State Agent of Service
22 records for Platinum.[35]   These facts, Atias contends, show that Klein intends to remain domiciled
23 in California indefinitely.[36]

24

25     [33]Remand Motion at 5.

26     [34]*Id.*

27     [35]*Id.*, Exh. 3.

28     [36]*Id.* at 6.

In her declaration, Klein states that she worked for Platinum in New York from May 2005 to 2010.[37] She states that she resided permanently in New York during that time, where she had lived for the past twenty-four years.[38] She reports that in September 2010, she established part-time residence in California to help Platinum open a branch office in Los Angeles.[39] She asserts that since moving to Los Angeles, she has retained her New York residence and lives there from approximately June through September each year.[40] She also states that she frequently returns to New York for work-related reasons and works from Platinum's New York office.[41] Given these various trips, she estimates that she currently resides in New York about 40% of the year.[42] Klein reports that she has an ownership interest in two properties in New York and owns several businesses located in New York; she does not own property or any businesses in California.[43] She has a New York driver's license, which reflects her New York residence and is registered to vote in New York as well.[44] She does not have a California driver's license and is not registered to vote here.[45] Klein asserts that she has never intended to remain in California indefinitely, but rather intends to return to New York when the Los Angeles branch office is firmly established.[46]

---

[37]Declaration of Zlaty Klein in Support of Notice of Removal ("Klein Decl."), Docket No. 5 (Mar. 12, 2014), ¶ 3.

[38]*Id.*

[39]*Id.*

[40]*Id.*, ¶¶ 3-4.

[41]*Id.*, ¶ 4.

[42]*Id.*

[43]*Id.*, ¶ 5.

[44]*Id.*, ¶ 6.

[45]*Id.*

[46]*Id.*, ¶ 3.

1   Atias contends it is highly unlikely, given Klein's position as Platinum's Vice President,
2   that she lives in New York 40% of the year.[47]  She also asserts that Klein's declaration regarding
3   her domicile is self-serving, and that the court should not accept it as proof of domicile when it
4   is contradicted by an inconsistent course of conduct.  See *Korn v. Korn*, 398 F.2d 689, 691 (3d
5   Cir. 1968).

6   The court finds Atias' arguments unconvincing.  Atias has adduced no evidence that Klein
7   intends to remain permanently domiciled in California.  Klein's statement, moreover, that she
8   intends to reside permanently in New York rather than in California is not inconsistent with the
9   facts.  The facts establish that Klein currently spends about 40% of her time living in New York
10  at a residence she currently maintains, that she has lived in New York for twenty-four years, is
11  registered to vote in the state, has a New York driver's license, has an interest in two New York
12  properties, and owns two businesses located in New York.  Klein states that she is in California
13  for work purposes, to help set up a branch office in Los Angeles.  Her statement that she intends
14  to reside indefinitely in New York and not California is consistent with these facts.

15  Atias' argument that it is "highly improbable" Klein is being truthful when she states that
16  she spends 40% of her time in New York because as Vice President she would necessarily have
17  to spend more than 60% of her time in California is, on the present record, nothing more than
18  speculation; for that reason, it does not adequately rebut the statements in Klein's declaration.[48]
19  Atias has not adduced evidence that the Vice President of a company like Platinum would need
20  to spend over 60% of her time in the office she was helping to establish and that she could not
21  perform the necessary work from another branch office, as Klein states she does when she travels
22  to New York.  Nor has Atias proffered evidence directly rebutting Klein's statements, e.g.,
23  evidence showing that Klein actually resides in California more than 60% of the time.
24  Accordingly, and absent any evidence to the contrary, the court concludes that defendants have
25  shown Klein is a New York citizen.

26
27
28
---
[47]Remand Motion at 6.

[48]Remand Motion at 6.

1              **d.      Conclusion Regarding Complete Diversity**

2           Because Atias is a California citizen and defendants are citizens of New York and Florida,

3    the court concludes that the parties' citizenship is completely diverse.

4              **2.      Whether the Amount in Controversy is Satisfied**

5           The court next considers whether the amount in controversy requirement is satisfied.

6    Although Atias does not argue that defendants have failed to show the amount in controversy

7    exceeds $75,000, the court has an independent duty to ensure it has jurisdiction to hear the case.

8    See *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) ("[S]ubject-matter jurisdiction, because

9    it involves a court's power to hear a case, can never be forfeited or waived.  Moreover, courts

10   . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even

11   in the absence of a challenge from any party" (internal quotations and citations omitted)).

12   Accordingly, the court considers the matter *sua sponte*.

13          "[W]hen a complaint filed in state court alleges on its face an amount in controversy

14   sufficient to meet the federal jurisdictional threshold, [the amount in controversy] requirement is

15   presumptively satisfied unless it appears to a 'legal certainty' that the plaintiff cannot actually

16   recover that amount." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).

17   See also *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (stating that

18   "the sum claimed by the plaintiff controls if the claim is apparently made in good faith," and that

19   "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount

20   to justify dismissal").  Where, by contrast, "it is unclear or ambiguous from the face of a

21   state-court complaint whether the requisite amount in controversy is pled[,] . . . [courts] apply a

22   preponderance of the evidence standard." *Guglielmino*, 506 F.3d at 699.  Finally, "when a

23   state-court complaint affirmatively alleges that the amount in controversy is less than the

24   jurisdictional threshold, the 'party seeking removal must prove with legal certainty that [the]

25   jurisdictional amount is met.'" *Id.* (quoting *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994,

26   1000 (9th Cir. 2007)).[49]  Because Atias' complaint does not plead the amount in controversy, it

27   _____

28          [49]In *Lowdermilk*, 479 F.3d at 999, the Ninth Circuit held that when a plaintiff pleads a
     specific amount in controversy that is less than the jurisdictional minimum, a defendant seeking

1

2

3   to remove the case under the Class Action Fairness Act ("CAFA") must show to a "legal
certainty" that the jurisdictional amount is at issue.  The court identified two principles informing
4   this conclusion: "First, as federal courts, we are courts of limited jurisdiction and we will strictly
construe our jurisdiction.  Second, it is well established that the plaintiff is 'master of her
5   complaint' and can plead to avoid federal jurisdiction."  *Id.* at 998-99 (citations omitted).  Several
district courts subsequently applied the legal certainty rule in § 1332(a) diversity jurisdiction cases.
6   See, e.g., *Site Mgmt. Solutions, Inc. v. TMO CA/NV, LLC*, No. CV 10–08679 MMM (JEMx),
2011 WL 1743285, *3 (C.D. Cal. May 4, 2011) (applying the legal certainty standard in a §
7   1332(a) diversity jurisdiction case); *Lara v. Trimac Transp. Servs. Inc.*, No. CV 10–4280–GHK
(JCx), 2010 WL 3119366, *1 n. 1 (C.D. Cal. Aug. 6, 2010) (same); but see *Lyon v. W.W.*
8   *Grainger, Inc.*, No. C 10–00884 WHA, 2010 WL 1753194, *1 (N.D. Cal. Apr.29, 2010) ("It
would be an unprecedented extension of Ninth Circuit caselaw to apply the burden of proof that
9   plaintiff suggests to a non-CAFA case such as this").
10       In *Standard Fire Insurance Company v. Knowles*, 133 S. Ct. 1345, 1347 (2013), plaintiff
filed a class action, alleging that he and the "[c]lass stipulate[d] they [would] seek to recover total
11   aggregate damages of less than [the CAFA jurisdictional threshold of] five million dollars."
Defendant removed, invoking CAFA.  *Id.* at 1348.  The district court remanded.  It found that
12   although the amount in controversy would have exceeded $5,000,000 in the absence of the
stipulation, it could not be met given the stipulation.  *Id.*  The Supreme Court held that the district
13   court erred in relying on the stipulation because "a plaintiff who files a proposed class action
cannot legally bind members of the proposed class before the class is certified."  *Id.* at 1349.
14       In *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975 (9th Cir. 2013), the Ninth
15   Circuit recognized that *Standard Fire* overruled *Lowdermilk*'s "legal certainty" standard in CAFA
cases.  See *id.* at 977 ("Our reasoning there for imposing on defendants the burden to prove the
16   amount in controversy to a legal certainty, rather than the ordinary preponderance of the evidence
standard, is clearly irreconcilable with the Supreme Court's reasoning in *Standard Fire*").  The
17   court held that the second principle informing the *Lowdermilk* rule – to "preserve the plaintiff's
prerogative . . . to forgo a potentially larger recovery to remain in state court"– was "directly
18   contradicted by *Standard Fire*['s holding that] a plaintiff seeking to represent a putative class could
not evade federal jurisdiction by stipulating that the amount in controversy fell below the
19   jurisdictional minimum."  *Id.* at 980, 981.  The court also concluded that *Standard Fire* had
20   overruled *Lowdermilk*'s directive that district courts "need not look beyond the four corners of the
complaint to determine whether the CAFA jurisdictional amount is met," and that § 1332(d)
21   required district courts to evaluate the potential claims of absent class members rather than
plaintiff's complaint.  *Id.* at 981.
22       Since *Rodriguez* was decided, district courts in the Ninth Circuit have disagreed as to
23   whether the legal certainty standard continues to apply in non-CAFA cases.  Compare *Stelzer v.*
*CarMax Auto Superstores Cal., LLC*, 13–CV–1788–LAB–JMA, 2013 WL 6795615, *5 & n. 2
24   (S.D. Cal. Dec. 20, 2013) (applying the legal certainty standard) with *Cagle v. C&S Wholesale*
25   *Grocers, Inc.*, No. 2:13–cv–02134–MCE–KJN, 2014 WL 651923, *7 (E.D. Cal. Feb. 19, 2014)
(holding that the preponderance of the evidence standard applies).
26       The court believes that *Standard Fire* and *Rodriguez* leave the legal certainty rule intact in
27   non-CAFA cases.  The rationale underlying those decisions – i.e., that a plaintiff cannot bind

28

1   is unclear from the face of the pleading whether the amount in controversy requirement is met.

2         Courts can consider facts presented in the notice of removal as well as summary-judgment-

3   type evidence in determining whether a defendant has shown by a preponderance of the evidence

4   that the amount in controversy exceeds $75,000.  See *Matheson*, 319 F.3d at 1090 ("Although we

5   have not addressed the types of evidence defendants may rely upon to satisfy the preponderance

6   of the evidence test for jurisdiction, we have endorsed the Fifth Circuit's practice of considering

7   facts presented in the removal petition as well as any 'summary-judgement-type evidence relevant

8   to the amount in controversy at the time of removal,'" quoting *Singer v. State Farm Mut. Auto.*

9   *Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)); see also *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115,

10   1117 (9th Cir. 2004) (reiterating that the "amount-in-controversy inquiry in the removal context

11   is not confined to the face of the complaint"); *Mireles v. Wells Fargo Bank, N.A.*, 845 F.Supp.2d

12   1034, 1069 (C.D. Cal. 2012) ("In addition to the notice of removal, the court considers

13   'summary-judgment-type evidence relevant to the amount in controversy at the time of removal,'

14   such as affidavits or declarations" (omitting internal quotation marks)).

15         Defendants assert in their notice of removal that the amount in controversy is satisfied

16   because Atias seeks to recover general and special damages, including damages for past and future

17   earnings and emotional distress.[50]  They also argue that Atias' prayer for attorneys' fees and

18   punitive damages establish that the amount in controversy is more than $75,000.[51]  It is proper to

19   aggregate these categories of recovery in determining the amount in controversy.  *Simmons v.*

20   *PCR Technology*, 209 F.Supp.2d 1029, 1032 (N.D. Cal. 2002) (aggregating attorneys' fees,

---

22   absent class members before a class is certified – has no application outside the class action
23   context.  In contrast, the reasoning that underlies the *Lowdermilk* rule – i.e., that federal courts
     are courts of limited jurisdiction, and that a plaintiff is "master of her complaint" – applies with
24   full force in non-CAFA cases.  Moreover, the "legal certainty" test for cases such as this does not
     derive from *Lowdermilk* and rests on a distinct line of reasoning.  The Ninth Circuit announced
25   the rule in *Sanchez v. Monumental Life Insurance Company*, 102 F.3d 398, 402 (9th Cir. 1996).
26   Accordingly, the court concludes that neither *Knowles* nor *Rodriguez* disturbs the "legal certainty"
     rule used to determine the amount in controversy in removal cases that are not class actions.

[50]Removal, ¶ 14.

[51]*Id.*

17

1    compensatory, punitive, and emotional distress damages in determining whether the jurisdictional

2    minimum had been satisfied).  Defendants' assertion that the amount in controversy is satisfied

3    merely because Atias seeks to recover general, special, and punitive damages, however, is far too

4    speculative to support a finding that Atias' complaint does, in fact, place more than $75,000 in

5    controversy.

6           As respects defendants' contention that the amount of attorneys' fees Atias stands to

7    recover is alone sufficient to exceed the amount in controversy, defendants have not met their

8    burden of showing this to be the case.  Attorneys' fees may be considered in evaluating whether

9    the amount in controversy requirement has been satisfied if a plaintiff sues under a statute that

10   authorizes an award of fees to the prevailing party.  See *Galt G/S v. JSS Scandinavia*, 142 F.3d

11   1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees,

12   either with mandatory or discretionary language, such fees may be included in the amount in

13   controversy"); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982); see also

14   *Peterson v. BASF Corp.*, 12 F.Supp.2d 964, 968 (D. Minn. 1998) (holding that a district court

15   scrutinizes both punitive damages and attorneys' fees claims more closely than a claim for actual

16   damages in determining the amount in controversy).

17          It is not sufficient, however, simply to note that attorneys' fees are recoverable: rather, the

18   defendant must provide and justify an estimate of the amount of fees likely to have been incurred.

19   See, e.g., *Ajimatanrareje v. Metro. Life Ins. Co.*, No. C 99–0614 SI ARB, 1999 WL 319216, *5

20   (N.D. Cal. May 12, 1999) ("Because defendant has not specified any amount of recoverable

21   attorneys' fees, it has failed to support its contention that attorneys' fees would satisfy the amount

22   in controversy requirement or that they, in combination with other damages, would push the

23   amount in controversy over the $75,000 minimum"); *Faulkner v. Astro-Med, Inc.*, No. C 99–2562

24   SI, 1999 WL 820198, *4 (N.D. Cal. Oct. 4, 1999) ("Defendant provides no breakdown of how

25   many hours were spent on issues for which attorney's fees are recoverable and no evidence that

26   all hours spent on the case would be billed at [$200 per hour].  In calculating potential attorney's

27   fees, defendant works solely from the assumption that plaintiff's first settlement offer of $72,000

28   is the amount in controversy.  Even if this were so, that offer expressly provided that each side

1   would bear its own fees and costs.  Therefore, defendant's argument that any attorney's fees of

2   $3,000 or more would bring the amount in controversy to $75,000 is unpersuasive").

3           In support of their contention that the attorneys' fees alone will more than likely exceed

4   $75,000, defendants cite three FEHA cases.  It is unclear whether the facts of two of these cases

5   were analogous to the facts here, however, and the remaining case involved facts and legal issues

6   significantly more complicated than those presented by Atias' complaint.  In *Simmons*, 209

7   F.Supp.2d at 1030, the first case cited by defendants, the district court considered whether the

8   amount in controversy was satisfied in a case filed by an individual against his former employer

9   alleging racial discrimination and retaliation.  The court offered its opinion that "maintaining a

10  race discrimination claim will undoubtedly require substantial effort from counsel.  The court

11  notes that in its twenty-plus years' experience, attorneys' fees in individual discrimination cases

12  often exceed the damages."  It noted, however, that "[w]hile attorneys' fees alone would not

13  necessarily exceed $75,000, when viewed in combination with alleged compensatory, punitive,

14  and emotional distress damages, the jurisdictional minimum is clearly satisfied."  *Id.* at 1035.

15  Defendants have made no attempt to estimate the value of Atias' prayer for compensatory, special,

16  and punitive damages.  Accordingly, *Simmons* does not assist defendants in proving that the

17  amount in controversy is satisfied.

18          In the second case defendants cite, *Flannery v. Prentice*, 26 Cal.4th 572, 576 (2001), the

19  California Supreme Court noted that in related proceedings, a woman's attorneys had been

20  awarded $891,042 in fees and expenses after she prevailed in a FEHA claim against her former

21  employer, the California Highway Patrol.  The opinion provides no facts concerning the

22  underlying lawsuit, and the court thus cannot determine that Atias' claim is likely to result in a fee

23  award of that magnitude were she to prevail.  For that reason, *Flannery* is also of no assistance

24  to defendants.

25          Finally, defendants cite *Akers v. County of San Diego*, 95 Cal.App.4th 1441, 1445 (2002).

26  In *Akers*, plaintiff's counsel recovered fees of $249,345 in a pregnancy/gender discrimination

27  lawsuit following trial.  *Akers* appears to have been a significantly more complicated case than

28  Atias' suit, however, which indicates the suit was likely significantly more expensive to litigate

1  than Atias' will be.  In *Akers*, a former deputy district attorney sued the county for gender and

2  pregnancy discrimination after defendants gave her poor write-ups and refused to transfer her to

3  certain departments following her pregnancy.  Her allegations of discrimination spanned three

4  years, and involved more complicated legal issues than are presented here, e.g., whether a

5  negative evaluation and counsel memorandum was adverse employment action.  The case also

6  involved post-trial briefing as to whether the jury had included an award of attorneys' fees in its

7  damages calculation.  The facts and legal issues in Atias' case appear more straightforward.  She

8  alleges that the day after telling defendants she was pregnant, she was placed on a performance

9  review and was terminated shortly thereafter.  Termination is the quintessential form of adverse

10  employment action.  Accordingly, the court does not believe that defendants' citation of *Akers*,

11  standing alone, suffices to meet its burden of proving by a preponderance of the evidence that the

12  amount in controversy exceeds $75,000.

13      In sum, because defendants have failed to show that the amount in controversy is satisfied,

14  the court lacks diversity jurisdiction and it must remand the case to state court.

15

16                          **III.  CONCLUSION**

17      For the reasons stated, the court denies Atias' motion to remand and denies her request for

18  attorneys' fees.  It *sua sponte* remands the case to Los Angeles Superior Court, however, because

19  defendants have failed to show that the amount in controversy is satisfied and the court therefore

20  lacks diversity jurisdiction to hear the action.  Because the court remands the action, it denies

21  defendants' motion to dismiss as moot.

22

23  DATED: July 16, 2014

24                          MARGARET M. MORROW
                            UNITED STATES DISTRICT JUDGE

25

26

27

28

20